IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**DONNA J. YANCEY**                                                                        **PLAINTIFF**

**VERSUS**                                              **CIVIL ACTION NO. 1:14cv458-LG-RHW**

**CAROLYN COLVIN,**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY**                                                                   **DEFENDANT**

## REPORT AND RECOMMENDATION

Through Counsel, Plaintiff Donna J. Yancey filed this action December 19, 2014, seeking judicial review under 42 U.S.C. § 405(g) of the denial of Yancey's claim for Social Security disability insurance benefits, disabled widow's benefits and supplemental security income.[1] Yancey asserts the Social Security Commissioner's decision should be reversed based on allegations that Administrative Law Judge (ALJ) William Wallis erred (1) in finding her obesity is not a severe impairment, (2) in rejecting the opinion of her treating psychologist, and (3) in finding the jobs identified by the vocational expert were within Yancey's limitations on social functioning.

Facts and Procedural History

On February 29, 2012 and March 2, 2012, Yancey filed applications for disability insurance benefits, disabled widow's benefits and supplemental security income, all alleging she had been disabled since February 14, 2009, when she was 54 years old. In her applications for benefits, Yancey alleged disability due to depression, rheumatoid arthritis and arthritis in her knees. She later complained of arm pain and a thyroid tumor for which she had surgery in November 2012, and at the hearing she added diabetes which had been diagnosed in February

---

[1]Yancey has been represented by counsel since at least July 12, 2013. [12, pp. 99-102]

2013, urinary incontinence, and high blood pressure which was controlled with medication. [12, pp. 136-150] The applications were denied initially on May 7, 2012, and on reconsideration the following month. [12, pp. 58-79]

ALJ William Wallis conducted a hearing on Yancey's claim on November 7, 2013, hearing testimony from Yancey and from Vocational Expert Robert Lee Walker, Jr. Yancey testified she was born in July 1954, and that her education included three years of college, "four of administrative business management, BS, BA." [12, p. 35] Yancey stated her thyroid problem causes depression and tiredness and she does not feel like doing anything; she stays in her bedroom when she can, going out only for doctor's appointments and to see her lawyer. [12, p. 37] Yancey is a widow. Her son and his two pre-teen children live with her. She is 5'9" and weighs 270 pounds and stated she has been overweight all her life. Yancey testified her knees hurt when she stands and she cannot walk very much, "maybe a third of a block." She cannot sit very long, but has to sit and stand in intervals. She stated a doctor told her when she was 28 years old that she had no cartilage in her right knee and would be in a wheelchair by age 35, and Dr. Reed recently also stated there is no cartilage in her right knee.[2] An ER doctor told her she had tendon problems in the kneecap in both knees. If her knees hurt, so do her legs and hips. In November 2012, she had the right lobe of her thyroid removed and was put on medication. She stated the rest of the thyroid had been removed when she was 16 and she was told she would be on medication the rest of her life, but doctors subsequently decided she did not need the medication and she did not take it again until after the November 2012 surgery. She loses her voice at times, especially if she talks a lot. She testified her voice is stronger after her morning coffee. Yancey testified she has had neuropathy in her right leg "for a while," which causes pain

---

[2] The undersigned saw only an April 22, 2008 record from Dr. Reed regarding Yancey's right knee. [12, p. 284]

in her calf and "through the bones" and she sometimes gets bleeding sores on that part of her leg. She uses pads for urinary incontinence, but does not take prescribed medication because it is not for her problem.  [12, pp. 39-43]

Yancey's typical day consists of lying in bed reading; she testified at the November 7 hearing that she had probably read "over 400 books this year."  She tries to do a little housework, but mainly stays in her bedroom.  If she walks more than a third of a block, she has to sit down, and she also cannot stand long either.  If she sits too long, her hips hurt worse, she has to keep her legs moving.  It would be difficult for her to kneel, bend and stoop, if she got down she would need something to hold onto to get back up.  She showers and has a shower bench to sit on because she cannot get out of the bathtub.  Her vision is blurry and she wears reading glasses. She seldom gets out, does not go to church, movies, or to visit friends or relatives.  She prefers to stay in her room.  She sees her therapist (Renata Kulpa) in Ocean Springs, Mississippi, on Tuesdays and attends group therapy on Thursdays.  [12, pp. 43-46]

Yancey stated she could pick up something off a table and move it to another room, but it could weigh no more than five to ten pounds; she could stand beside a table no longer than 15-20 minutes and would require five to ten minutes to recover before she could resume standing.  It takes her ten minutes to walk to a friend's house a quarter of a block from her house.  She stated she could sit a maximum of 30 minutes before she has to change position, and estimated she lies down four hours between 9:00 a.m. and 5:00 p.m.  She can wash dishes for 10-15 minutes before she has to rest, and if she were hired for a full time job, she would expect to miss work three or four days a week– she cannot stand a lot as was required by her casino job, and she could not manage it even with a sit/stand option, she would require a place to lie down, too.  She receives food stamps and does her own grocery shopping once or twice a month.  Yancey testified she

can no longer do her own yard work, she goes around the yard once with a push mower and has to go inside and lie down. [12, pp. 46-49]

Vocational Expert Walker reviewed Yancey's work history as a supervisor in a retirement apartment from 1991 to 2004, which is a sedentary job with a skill level of 7, and her last employment as a customer service representative which is light work with a skill level of 6. Walker opined that Yancey had transferrable clerical and communication skills from her prior employment. ALJ Wallis posed five hypotheticals to Walker, all of which assumed a person of Yancey's age, education, language and work background. Under the first hypothetical, Walker considered these limitations: lift, carry, push or pull 50 pounds occasionally, 25 pounds frequently; stand and/or walk six hours in an eight-hour day; sit six hours in an eight-hour day; occasionally stoop, kneel, crouch and crawl. Walker found such a person could do the past work of both the jobs Yancey had performed. The second hypothetical differed from the first only in that it modified the weight restrictions, reducing to 20 pounds the weight to lift, carry, push or pull occasionally and 10 pounds frequently. Based on those limitations, Walker again opined that such a person could perform the duties of both Yancey's prior jobs.

The third hypothetical was the same as the second, with added mental limitations that the individual could understand, remember and carry out simple and/or detailed – but not complex– instructions, could sustain concentration, attention and persistence for two-hour periods, interact adequately with supervisors, coworkers and the general public, and could respond appropriately to workplace changes. Again, Walker testified, such a person could perform the past work Yancey had done. The fourth hypothetical differed from the third only in that it was limited to understanding, remembering and carrying out simple tasks and instructions. Walker testified such a person would still be able to perform detailed-type work such as a storage rental clerk or mail room clerk which are light work jobs with a skill level of 2, consisting of routine, repetitive,

simple tasks, and that such jobs exist in significant numbers in the national economy. The fifth hypothetical posed by ALJ Wallis added that the person would be off-task at least fifteen percent of the workday, would require the ability to lie down during unscheduled periods of at least one hour per day. Walker testified such a person would be unable to do Yancey's past work, nor would other competitive employment be available for such a person. [12, pp. 50-55]

On December 5, 2013, ALJ Wallis issued his 11-page decision finding Yancey has not been under a disability as defined in the Social Security Act from February 14, 2009 through the date of the decision. [12, pp. 14-24] The Appeals Council denied review November 13, 2014 [12, pp. 5-7], and Yancey filed the action now before the Court.

## Standard of Review

Judicial review of a final decision of the Commissioner of Social Security is limited to determining whether substantial record evidence supports the Commissioner's factual findings, and whether such findings are reached through the application of correct legal standards. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The Court reviews the entire record to determine whether substantial evidence supports the Commissioner's decision. *Villa*, 895 F. 2d at 1022. Credibility of witnesses and conflicts in the evidence are issues for resolution by the Commissioner, not the Court. It is not the Court's prerogative to substitute its judgment for that of the Commissioner or to re-weigh the evidence. *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007); *Harris*, 209 F.3d at 417 (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)); *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988)(a finding of "no substantial evidence" is

appropriate only if no credible evidentiary choices or medical findings support the decision); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). Factual findings supported by substantial record evidence are conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). The Court may reverse a decision of the Commissioner if it is based upon faulty legal analysis, but should accept the Commissioner's legal conclusions if they are within reasonable meanings of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 841-44 (1984). Absent a finding that the decision is unsupported by substantial evidence or that the Commissioner applied an incorrect legal standard, the Court must affirm the Commissioner's decision [*Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001)]; the Commissioner's decision is accorded great deference and "will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the ... decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

<u>Analysis</u>

Under the Social Security Act disability is "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months..." 42 U.S.C.A. § 423(d)(1)(A). It was Yancey's burden to prove a disability which precluded her from engaging in substantial gainful work during the pendency of her applications. *Masterson v. v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991); *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) ("suffering of some impairment does not establish disability; a claimant is disabled only if [he] is 'incapable of engaging in *any* substantial gainful activity'").

ALJ Wallis applied the correct law for determining disability – following the five-step sequential evaluation process set out at 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)(i-v). Step one requires determination of whether the claimant is engaging in substantial gainful activity, *i.e.*, work that involves significant physical or mental activities and is usually done for pay or profit. Judge Wallis found Yancey had not engaged in such activity since February 14, 2009. [12, p. 17]

Step two requires determination of whether the claimant has a medically determinable impairment or combination of impairments which meets the duration requirement and is severe, *i.e.*, which significantly limits her ability to perform basic work activities. ALJ Wallis found Yancey has severe impairments of diabetes mellitus, a thyroid disorder, knee pain of unknown etiology and an affective/mood disorder, the combined effects of which have more than a minimal impact on her ability to perform work-related functions. The ALJ considered Yancey's obesity in combination with her other impairments, but found that Yancey failed to establish that any other claimed impairments, including urinary incontinence and hypertension, are severe under the Act.

Step three requires determination of whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Unless the impairment/combination of impairments is of such severity and meets the duration requirement, the analysis continues to step four. Judge Wallis concluded the evidence of Yancey's physical impairments of diabetes and knee pain do not meet or medically equal the Listings of 9.08 and 1.02, respectively. The ALJ noted the absence of evidence both of a specific abnormality causing Yancey's knee pain or of any inability to effectively ambulate, as well as the lack of medical evidence to establish that symptoms from her diabetes meet or equal any listing. He also noted that no medical expert had

opined that Yancey's conditions medically equaled these listings. Judge Wallis further found the severity of Yancey's mental impairment does not meet or medically equal the listing criteria under 12.04, since she had only mild restriction in daily living activities, moderate difficulties in social functioning, mild difficulties with respect to concentration, persistence or pace, and no episodes of decompensation of extended duration. The listing requires marked restriction, *i.e.*, more than moderate but less than extreme, in at least two of these categories or repeated episodes of decompensation of extended duration, *i.e.*, three episodes within a year, or an average of once every four months, each lasting for at least two weeks. [12, pp. 18-19]

At the fourth step of the evaluation, the ALJ determines (1) the claimant's residual functional capacity, *i.e.*, her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments, and (2) whether she has the residual functional capacity to perform the requirements of her past relevant work. If claimant can perform the requirements of her past relevant work, she is not disabled; if she cannot, the inquiry proceeds to the fifth and final step of the evaluation where the Commission must determine, from the residual functional capacity, the claimant's age, education, and work experience, whether she can make an adjustment to other work. If she can do other work, she is not disabled. To support a finding that a claimant is not disabled at step five, the Commission must provide evidence demonstrating that other work which the claimant can do exists in significant numbers in the national economy.

Based upon the entire record, and considering all Yancey's symptoms and the extent to which they "can reasonably be accepted as consistent with the objective medical evidence and other evidence," ALJ Wallis found Yancey has the residual functional capacity to lift, carry, push and pull twenty pounds occasionally and ten pounds frequently; to stand and/or walk six hours in an eight-hour work day, and to sit a like number of hours; to occasionally stoop, crouch,

kneel and crawl; and she has the mental ability to understand, remember and carry out simple and/or detailed, but not complex, tasks and instructions; to attend, concentrate and persist for two-hour periods; to interact adequately with supervisors, coworkers and the general public, and to respond appropriately to workplace changes. [12, p. 20-21]  Judge Wallis found Yancey capable of performing her past work as an apartment complex supervisor and as a casino customer service representative.  [12, p. 22]  Therefore, at step four, the ALJ found Yancey not disabled.

Yancey first challenges the ALJ's finding that her obesity was not a severe impairment, essentially arguing that a finding that her obesity is severe is mandated by her body mass index (BMI) in excess of 40, abnormal weight gain, her diabetes diagnosis, knee pain and depression. For the following reasons, the undersigned disagrees.  First, Commission rulings state, "There is no specific level weight or BMI that equates with a 'severe' or 'not severe' impairment."  SSR 02-1P, 2002 WL 34686281 (September 12, 2002).  Second, it was the Plaintiff's burden to establish some link between her obesity and her other conditions.  *See Rodriguez v. Massanari*, 2001 WL 406226, at *3-4 (N.D. Tex. April 17, 2001)(holding the plaintiff did not meet his burden of showing how his obesity affected his other conditions).  Finally, the undersigned notes that during the hearing, while discussing her 1970 thyroid surgery at age 16, Yancey testified, "I've been overweight all my life." [12, p. 41]  Yet, she was thereafter able to secure employment and work steadily for years (including five years as a casino customer service representative and 13 years as supervisor at retirement apartments) to develop the "excellent work history" to which she refers [15, pp. 2, 5], which is reflected in her earnings and employment records [12, pp. 151-161], and which the ALJ noted in his decision.  [12, p. 22]

Yancey next urges the ALJ improperly rejected the opinion of Renata Kulpa, who Plaintiff refers to as a psychologist. [15, p. 7]  Although the Commissioner states, "Ms. Kulpa

does not appear to be a psychologist," which if correct would mean she is not an "acceptable medical source" under Social Security regulations, and the ALJ would not be required to weigh her opinions under the factors applicable to treating physicians. [16, p. 7] The undersigned notes that the Mental Impairment Medical Source Statement upon which Plaintiff relies does not identify any title for Kulpa, nor does the certification which she signed. In fact, the certification has two signature lines, one designated simply "signature" and one designated "physician's signature (if completed by therapist)," and Kulpa placed her signature on the former rather than the latter. [12, p. 323] These observations notwithstanding, the undersigned is of the opinion that the ALJ adequately explained why he gave "little weight" to Kulpa's opinion that Yancey had serious difficulties interacting with others and would miss work more than three times monthly.

Where a treating physician's opinion is conclusory, or without objective medical evidence supporting it, or otherwise unsupported by the record or inconsistent with the record as a whole, the ALJ is not required to give the opinion controlling weight. 20 C.F.R. § 404.1527(c). Factors which an ALJ considers in determining the weight to be given a treating physician's opinion include the length of the treatment relationship and frequency of examination; the nature and extent of the treatment relationship, the treatment provided, kinds and extent of examinations and testing which the source has performed or ordered from specialists and independent laboratories; the relevant evidence, particularly medical signs and laboratory findings which the source has presented to support her opinion; and the consistency of the opinion with the record as a whole. 20 C.F.R. § 404.1527.

Judge Wallis specifically noted Yancey began seeing Kulpa at the Bethesda Free Clinic only three months before the November 2013 hearing; he found that Kulpa's longitudinal treatment record fails to demonstrate her "opined level of impairment has lasted, or is expected

to last, for the requisite twelve month period;" and that Yancey's own sworn statements did not support Kulpa's opinions. [12, p. 22] Clinic records indicate Yancey began treating there on August 8, 2013, for a complaint of edema and pain in her legs for which she was prescribed medication by a medical doctor. [12, pp. 333-334] She first saw Kulpa on August 20, 2013, and Kulpa's check-list assessment is dated October 4, 2013 and purports to establish limitations as of 2009. [12, pp. 318-323] The records document no more than seven individual sessions with Kulpa from August to October 2013. [12, pp. 324-327, 329, 331] Although Kulpa noted that Yancey never left her home except to attend medical appointments, Yancey testified she did her own grocery shopping once or twice a month, and she indicated in other reports that she drives, cares for her grandchildren and takes them to and from school three to five times a week, goes outside two or three times a day and picks up garbage in the yard. She further stated she has no problem tending to her personal needs, she spends time with emails and facebook on her computer three to six times a week, reads, crochets, watches television, does laundry, prepares food daily and does dishes. [12, pp. 168-175, 192, 311] Medical records show she repeatedly reported that she was exercising regularly from the fall of 2012 through the summer of 2013. [12, pp. 233, 238, 243, 292, 298] The undersigned finds ample record evidence to support a determination that Kulpa's opinions were not consistent with the record as a whole. The undersigned finds no error in the rejection of Kulpa's opinions found on the check-list form she filled out.

      Finally, Yancey challenges the finding that she could do her past relevant work or other jobs identified by the Vocational Expert. Yancey's own description of her prior casino job was that it involved working on the computer, sitting four hours and standing four hours in a day, walking two hours, reaching, writing, typing or handling small objects eight hours a day, and lifting less than ten pounds frequently. In her job as supervisor of retirement apartments, she

showed rentals, cooked as needed, transported residents, answered phones, prepared medications, did housekeeping and laundry as needed, trained new employees, and provided customer service.  She stated she walked six to eight hours a day, stood six to eight hours a day, sat two to four hours a day, wrote, typed or handled small objects eight to ten hours a day and lifted no more than ten pounds.[3]  [12, pp.  177-178]

Yancey contends her limitations in social functioning would preclude her from doing her past relevant work as those jobs are described in the *Dictionary of Occupational Titles* (DOT); that she could not do those jobs because they require significant social skills.  The Commissioner points out that the DOT describes maximum job requirements for each occupation, not the range of requirements of a particular job in a specific setting.  Social Security Ruling (SSR) 00-4p.  2000 WL 1898704, at *3 (December 4, 2000).  While the ALJ found Yancey had "moderate" difficulties in social functioning during his evaluation of her mental impairments, the Fifth Circuit has upheld an ALJ's finding that "moderate" means "there are some moderate limitations, but the person can still perform the task satisfactorily."  *Cantrell v. McMahon*, 2007 WL 557567 (5th Cir. February 15, 2007).  With the assistance of the Vocational Expert, the ALJ found Yancey could still perform her past relevant work.[4]  It bears repeating that the burden of proof remains with the Plaintiff at step four of the sequential evaluation to prove her disability.  The undersigned finds Yancey failed to carry that burden.

The record demonstrates the ALJ carefully reviewed and considered all the evidence of Plaintiff's claimed impairments.  Following the prescribed analysis, he identified the evidence upon which he relied and adequately explained the weight he assigned to the evidence.

---

[3]Interestingly, on the day following her November 2012 thyroid surgery, her treating physician only limited her weight lifting to 10 pounds.  [12, p. 254]

[4]The Vocational Expert also testified she could perform the work of a storage rental clerk or mail room clerk, both of which are light work with a skill level of 2, consisting of routine, repetitive, simple tasks.

**RECOMMENDATION**

Based upon consideration of the entire record of proceedings below and controlling law, the undersigned is of the opinion that the Commissioner's final decision is supported by substantial evidence and in accord with relevant legal standards. The undersigned therefore recommends that [14] Plaintiff's motion for summary judgment be denied, and that the decision of the Commissioner be affirmed.

**NOTICE OF RIGHT TO APPEAL/OBJECT**

Under Rule 72(a)(3), *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, after service of a copy of this Report and Recommendation, each party has fourteen days to serve and file with the Clerk any written objections to it. Within seven days of service of objections, the opposing party must either serve and file a response or notify the District Judge that he does not intend to respond to the objection. An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects; the District Court need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy is barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion accepted by the District Court to which he did not object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed, this the 20th day of May, 2016.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE